| | | |
|---|---|---|
| **ALL COMMERICAL FLOORS, INC.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **NO. 3:17-cv-01252** |
| **v.** | ) | **CHIEF JUDGE CRENSHAW** |
| | ) | |
| **COMMERCIAL FLOOR PRODUCTS,** | ) | |
| **LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the Court is Defendants' Rule 12(c) Motion For Judgment On The Pleadings Relating to Plaintiffs' Second Amended Complaint. (Doc. No. 90.) Plaintiffs have filed a response in opposition (Doc. No. 100), to which Defendants have replied (Doc. No. 102). For the following reasons, Defendants' motion will be granted in part and denied in part.

## I.    Background

Kevin Jones ("Jones") created All Commercial Floors, Inc. ("ACF") (collectively "Plaintiffs") to serve as a business focused on installing various flooring surfaces in commercial industries. (Doc. No. 73 at 3.) Two years after forming ACF, Jones hired Emmett Lewis Moorer, II ("Lewis"), a Certified Public Accountant, as ACF's Vice President of National Accounts. (Id.) After being hired, Lewis opened an ACF-affiliate office in Nashville, Tennessee. (Id.) ACF and Lewis also executed an employment agreement ("Employment Agreement"), which provided: (1) Lewis's compensation; (2) ACF's right to terminate Lewis for cause; and (3) certain financial spending limitations imposed on Lewis's operation of the ACF-satellite office. (Id.)

One year later, in 2003, Lewis approached Jones with the idea of forming a "sister" entity to hold and manage ACF's real estate holdings and other assets. (Id.) Lewis explained that (1) the "sister" entity would be useful for tax and liability purposes; and (2) the entity should be owned by Lewis and his wife, Jane Moorer ("Jane"), to avoid complications with the then-recently enacted Sarbanes-Oxley Act. (Id. at 4.) Although Lewis and Jane would own the "sister" entity, named Commercial Floor Products ("CFP"), Plaintiffs would retain rights in CFP's assets, including by having the option to purchase CFP for $100,000 upon Lewis's death (the "Buyback Option"). (Id. at 4, 6). In reliance on Lewis and Jane's representations and financial expertise, Jones agreed to form CFP as a Tennessee limited liability company, with Lewis and Jane as the co-owners. (Id. at 4.)

Plaintiffs allege that, following CFP's formation, ACF would purchase certain building materials from CFP at a markup, and CFP would use those excess funds to purchase real estate and other assets. (Id.) Specifically, Lewis, through CFP, used these excess funds to purchase three properties: (1) 2025 Meridian Street, Arlington, Texas ("Meridian Property"); (2) 3070 Sidco Drive, Nashville, Tennessee (the "Sidco Property"); and (3) 2927 Armory Drive, Nashville, Tennessee (the "Armory Property"). (Id. at 5.) ACF then entered leases with CFP at each of these properties, with ACF as the lessee and CFP as the lessor ("Meridian Lease," "Sidco Lease," and "Armory Lease," respectively). (Id.)

Plaintiffs allege that, in 2011, Lewis, through CFP, forced ACF to relocate from the space it leased in the Armory Property to the Sidco Property, so CFP could lease the Armory Property to a third-party technology company. (Id. at 7.) Further, Lewis, through CFP, forced ACF to pay to finish out the space in the Sidco Property, despite ACF being relieved of making any capital improvements to the property under the terms of the Sidco Lease. (Id.) Plaintiffs allege that Lewis

induced them to perform these actions by reminding them of their ability to reap the ultimate benefits of these one-sided deals through exercise of the Buyback Option. (Id.) Further, in April 2013, Lewis instructed the Secretary and Treasurer of ACF, Joyce Payne, to extend the Armory Lease for an additional 60 months (September 2015 to September 2020), without consulting Jones. (Id. at 8.) Finally, in 2016, Lewis again forced ACF to relocate from the Sidco Property back to the Armory Property, as it had received a third-party offer to lease the Sidco Property. (Id.)

In 2015, Lewis began a separate business venture, unaffiliated with ACF and CFP, and allegedly started neglecting his responsibilities and duties to ACF. (Id.) Plaintiffs allege that this neglect continued into 2016 and 2017, and, in 2017, Jones insisted that Lewis focus on his obligations to ACF. (Id. at 9.) Rather than refocus his efforts on ACF, Lewis allegedly retaliated by making derogatory remarks about Jones and his wife to ACF employees, vendors, and customers. (Id.) Finally, in July 2017, ACF terminated Lewis's employment due to his refusal to (1) adhere to new corporate policies and procedures, including a self-imposed audit of the ACF-satellite office; and (2) reimburse ACF $111,364 for certain expenses. (Id. at 9-10.) Upon his termination, Plaintiffs discovered that Lewis had made a host of unapproved expenses on behalf of CFP, totaling a "seven-figure sum." (Id. at 10.) Moreover, after being terminated, Lewis maintained that neither Jones nor ACF possessed any rights or claim to CFP's assets (real estate or otherwise). (Id. at 15.)

Further, after terminating Lewis, Plaintiffs discovered that Lewis had misrepresented the terms of the Armory Lease. (Id. at 15.) The Armory Lease was the last in time of the three leases, and, at the time of execution, Lewis represented that the terms were the same as those in the Sidco and Meridian Leases. (Id.) Plaintiffs allege that, based on that representation, Lewis sent only the signature page of the Armory Lease, which Jones signed. (Id.) However, Plaintiffs allege that, in

actuality, the Armory Lease contained certain unconscionable terms, namely the requirement that ACF continue performance, without any offset or deduction in rent, even if CFP breached the agreement. (Id.) Moreover, Plaintiffs allege that Lewis, in violation of the Armory Lease, excluded ACF's access to 7,500 square feet of commercial space. (Id.)

As a result of these actions, Plaintiffs raise a multitude of claims against Defendants, including claims for breach of contract, fraud, breach of fiduciary duty, promissory estoppel, unjust enrichment/quantum meruit, dissolution of partnership or joint venture, theft of trade secrets, conspiracy, conversion, trespass to chattels, and constructive trust. (Id. at 17-37.) Plaintiffs also assert claims under the Computer Fraud and Abuse Act, Texas Property Code, as well as claims for declaratory relief and exemplary damages. (Id.) As noted above, Plaintiffs twice amended their complaint. (See Doc. Nos. 31, 73.) After filing their Second Amended Complaint, Defendants filed the instant Rule 12(c) motion, seeking to dismiss Plaintiffs' claims for: (1) declaratory judgment regarding the Buyback Option; (2) fraud; (3) breach of fiduciary duty; (4) promissory estoppel; (5) unjust enrichment/quantum meruit; (6) civil conspiracy; and (7) breach of contract (the Armory Lease). (Doc. No. 91 at 2-3.)

## II.     Defendants' Rule 12(c) Motion

In their partial motion to dismiss, Defendants first argue that Plaintiffs' claim for declaratory relief regarding the Buyback Option must be dismissed for lack of subject matter jurisdiction because it presents a hypothetical controversy, as opposed to an actual controversy. (Doc. No. 91 at 5.) Further, Defendants maintain that Plaintiff's breach of contract and declaratory judgment claims regarding the Armory Lease should be dismissed because the unambiguous terms of the lease provide that ACF is not excused from its obligations, even if CFP is in breach. (Id. at 8.) In regards to Plaintiffs' fraud claim, Defendants contend that the claim is insufficiently

particularized and not based on past or existing facts, as required under Tennessee law. (Id. at 10-12.) As to Plaintiffs' breach of fiduciary duty claim, Defendants assert that their actions were on behalf of CFP, and, as such, their fiduciary duty to ACF was not implicated. (Id. at 12-15.) Moreover, as with Plaintiffs' fraud claim, Defendants argue that Plaintiffs' civil conspiracy claim is insufficiently particularized, and, in any event, there is no underlying tort supporting the claim. (Id. at 16-18.) Finally, Defendants assert that Plaintiffs' unjust enrichment/quantum meruit and promissory estoppel claims are insufficiently pleaded. (Id. at 18-20.)

### III.   Analysis

#### A.   Federal Rule of Civil Procedure 12(c)

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. Hayward v. Cleveland Clinic Found., 759 F.3d 601, 608 (6th Cir. 2014). "In reviewing a motion for judgment on the pleadings, [the Court will] construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [him to] relief." Id. (internal quotation marks and citations omitted). However, a legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677, (2009)).

In ruling on a motion under Rule 12(c), the court may look only at the "pleadings." The term "pleadings" includes both the complaint and the answer, Fed. R. Civ. P. 7(a), and "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). It therefore follows that an attachment to an answer that is a "written instrument" is part of the pleadings and can be considered on a Rule 12(c) motion for judgment on the pleadings without the motion being converted to one for summary judgment. Beasley v. Wells Fargo Bank, N.A., Case No. 3:17-cv-00726, 2017 WL 3387046, at *3 (M.D. Tenn. Aug. 7, 2017); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Thus, a court deciding a Rule 12(c) motion may consider documents attached to the complaint or answer, as long as they are central to the plaintiff's claim and of undisputed authenticity. Beasley, 2017 WL 3387046, at *3 (citing Horsley, 304 F.3d at 1135 (holding that "the Rule 12(b)(6) incorporation by reference doctrine should apply in Rule 12(c) cases as well"); accord Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents referenced in the pleadings that are "integral to the claims" in deciding motion to dismiss).

B. Declaratory Judgment Claim[1]

Defendants argue that Plaintiffs' Declaratory Judgement Act claim regarding the Buyback Option must be dismissed for lack of subject matter jurisdiction because it fails to present an actual controversy.[2] (Doc. No. 91 at 7.) Specifically, Defendants contend that, to the extent Plaintiffs

---

[1] Defendants also sought to dismiss Plaintiffs' declaratory judgment claim regarding certain non-competition and non-disclosure provisions of the Employment Agreement. (Doc. No. 91 at 7.) However, the parties filed a joint stipulation of dismissal as to this claim. (Doc. No. 98.) Accordingly, the Court does not discuss the parties' arguments related to this now-dismissed claim.

[2] Although Defendants' make their subject-matter jurisdiction argument in the context of a Rule 12(c) motion, the Court nonetheless considers the argument. Thornton v. Southwest Detroit Hosp., 895 F.2d 1131, 1133 (6th Cir. 1990) (holding that the issue of "subject matter jurisdiction

seek a declaratory judgment regarding their rights under the Buyback Option, that issue "does not even come into play unless and until [Lewis] predeceases Mr. Jones." (Id.) Further, according to the Buyback Option's terms, Plaintiffs would have to satisfy other, additional criteria including payment of $100,000 within 250 days of Lewis's death and assumption of all of CFP's liabilities. (Id. at 6-7.) Therefore, because Plaintiffs' claim is premised on speculative events, any of which may not occur, Defendants request that this Court dismiss Plaintiffs' declaratory judgment claim for lack of subject matter jurisdiction.

Plaintiffs respond that their declaratory judgment claim regarding the Buyback Option presents an actual, ripe controversy. (Doc. No. 100 at 10.) Plaintiffs assert that Defendants' position ignores the practical realities at stake because if Lewis and Jane continue to exert full ownership of CFP's assets, they could dispose of, or otherwise convert, those assets before the Buyback Option is triggered. (Id. at 11.) Plaintiffs contend that there is a reasonable likelihood that they will suffer financial harm absent a declaratory judgment that clarifies the existence and enforceability of the Buyback Option. (Id. at 11-12.) Plaintiffs further assert that (1) such a declaration would settle the parties dispute over the validity and nature of the Buyback Option; (2) they are not seeking such a declaration for procedural fencing; (3) the issue involves no comity concerns; (4) the judgment would serve a useful purpose by clarifying whether or not Plaintiffs have an interest in CFP's assets; and (5) there is no "alternative remedy" that would be superior or more effective. (Id. at 12.)

The Declaratory Judgment Act states that in a case of actual controversy within its jurisdiction, the Court may declare the rights and other legal relations of any interested party

_____

may be raised . . . at any juncture because a federal court lacks authority to hear a [claim] without subject matter jurisdiction.")

seeking such declaration. 28 U.S.C. § 2201. The central purpose of the Declaratory Judgment Act is to provide the opportunity to clarify rights and legal relationships without waiting for an adversary to file suit. Severe Records, LLC v. Rich, 658 F.3d 571, 580 (6th Cir. 2011).

"The existence of an 'actual controversy' in a constitutional sense is necessary to sustain jurisdiction under the Declaratory Judgment Act." Nat'l Rifle Ass'n of Am. v. Magaw, 132 F. 3d 272, 279 (6th Cir. 1997). A justiciable controversy is "distinguished from a difference or dispute of a hypothetical or abstract character . . . [i]t must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. (quoting Aetna Life Ins. Co. of Hartford v. Haworth, 300 U.S. 227, 240-41 (1937)). The Supreme Court has elaborated that:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 272 (1941). "Accordingly, a touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued, or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass." Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2002) (citing Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 580-81 (1985)).

Here, the Court concludes that Plaintiffs have not made a sufficient threshold demonstration that they have Article III standing to pursue their Declaratory Judgment Act claim regarding the Buyback Option. Put simply, Plaintiffs fail to show that their adverse legal interests are of sufficient immediacy to warrant the issuance of a declaratory judgment. <u>Md. Cas. Co.</u>, 312 U.S. at 272. Plaintiffs urge the Court that resolving this claim in their favor will prevent harm by clarifying the existence and enforceability of the Buyback Option and their rights in CFP's assets. (Doc. No. 100 at 11.) However, Plaintiffs' rights under the Buyback Option's express terms are only triggered if Lewis predeceases Jones. (<u>See</u> Doc. No. 73-2 at 3-4.) Thus, Plaintiffs' feared outcome—that Defendants will refuse to honor the Buyback Option's terms—is based on a speculative chain of events, any of which may not occur. <u>See</u> <u>Harrods, Ltd.</u>, 237 F. Supp. 2d at 406-07. Specifically, Plaintiffs' argue that <u>if</u> Lewis predeceases Jones, Defendants <u>may</u> refuse to fulfill their obligations under the Buyback Option, and, therefore, a declaratory judgment is necessary to preserve their rights in CFP's assets. The Court concludes that resolving Plaintiffs' Declaratory Judgment Act claim would necessarily require it to decide a dispute based on the "probability of some contingency that may or may not come to pass." <u>Id.</u> Consequentially, no case or controversy is present, as required by § 2201, and, therefore, the Court will dismiss Plaintiffs' declaratory judgment claim for lack of subject matter jurisdiction pursuant to Federal Rule Civil Procedure 12(b)(1). <u>Magaw</u>, 132 F. 3d at 279.

C. <u>Armory Lease Claims (Declaratory Judgment Act and Breach of Contract)</u>

Defendants next contend that Plaintiffs' "Armory Lease claims" (breach of contract and declaratory judgment that Plaintiffs are excused from further performance) must be dismissed because the Armory Lease's unambiguous terms provide that Plaintiffs are not excused from their obligations even if CFP is in breach. (Doc. No. 91 at 8.) Defendants argue that, even if CFP has

breached the Armory Lease (which they do not concede), the Armory Lease's express terms require ACF to continue performing until it obtains a final, non-appealable judgment against CFP. (Id. at 9-10.) Consequently, Defendants argue that Plaintiffs are "clearly not entitled to be excused from further performance under the contract." (Id. at 10.)

Plaintiffs respond that their assent to the Armory Lease was fraudulently induced and the agreement's terms are unconscionable. (Doc. No. 100 at 7.) First, Plaintiffs argue that, as evidenced from their factual allegations, Lewis falsely represented that the Armory Lease's terms were substantially similar to those of the Meridian and Sidco Leases, when, in actuality, the Armory Lease contained unconscionable provisions in CFP's favor. (Id. at 8.) Therefore, because Plaintiffs' assent to the Armory Lease was fraudulently induced, ACF is excused from further performance. (Id.) Plaintiffs also contend that disputed factual issues surround the Armory Lease's formation, precluding the Court from dismissing any claims related to the Armory Lease at this early juncture. (Id.) Finally, Plaintiffs assert that, even if the Armory Lease is valid and enforceable, the agreement specifically provides for a contractual right to sue for breach, which Plaintiffs are currently pursuing through this lawsuit. (Id. at 9.) Therefore, Plaintiffs maintain that their claims should be allowed to proceed. (Id.)

To establish a claim for breach of contract, a plaintiff must show "(1) the existence of a contract; (2) breach of the contract; and (3) damages [that] flow from the breach." Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, 79 F.3d 496, 514 (6th Cir. 1996). In interpreting a contract, the role of the Court is to ascertain and give effect to the intent of the parties. Pineda Transp., LLC v. FleetOne Factoring, LLC, No. 3:18-cv-0089, 2018 WL 2137760, at *3 (M.D. Tenn. May 9, 2018). The task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. Id.

Moreover, as to the issue of unconscionability:

> A court will generally refuse to enforce a contract on the ground of unconscionability only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other. In determining whether a contract is unconscionable, a court must consider all the facts and circumstances of a particular case. If the provisions are then viewed as so one-sided that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable.

Haun v. King, 690 S.W. 2d 869, 872 (Tenn. Ct. App. 1984) (internal citations omitted).

Specifically, as to unconscionable lease provisions, Tennessee Code Annotated § 47-2A-109 provides that:

> If the court as a matter of law finds a lease contract or any clause of a lease contract to have been unconscionable at the time it was made the court may refuse to enforce the lease contract, or it may enforce the remainder of the lease contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Further, a plaintiff alleging fraudulent misrepresentation, as Plaintiffs claim with respect to Lewis's misrepresentations regarding the Armory Lease's terms, must show that: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation. Metro. Gov't of Nashville and Davidson Cnty. v. McKinney, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992).

Here, the Court finds that resolving Plaintiffs' Armory Lease claims requires fact-intensive findings and analysis ill-suited for determination in a Rule 12(c) motion. See Sallis v. Portfolio Ambassador East, LLC, Case No. 07-cv-2911, 2008 WL 4425876, at *7 n.7 (N.D. Ill. Sept. 25,

2008) (stating that factual disputes should not be decided on Rule 12(c) motions). Definitively determining whether the Lewis fraudulently induced Jones to execute the Armory Lease on behalf of ACF would require the Court to resolve several disputed factual issues, such as: (1) the precise conduct of the Lewis, including his specific representations about the Armory Lease's terms; (2) Jones's knowledge regarding the Armory Lease's actual terms at the time he agreed to its terms; and (3) whether the alleged communication from Lewis to Jones actually contained only the Armory Lease's signature page. Additionally, deciding whether the Armory Lease contains unconscionable terms would require the Court to consider "all the facts and circumstances" of this early-stage case. See Haun, 690 S.W. 2d at 872. These kinds of factual determinations are inappropriate for a Rule 12(c) motion, and the Court believes the better course of action is to allow development of the factual issues through discovery to aid in the ultimate disposition of the issues, whether through additional dispositive motions or more likely at trial. Sallis, 2008 WL 4425876, at *7 n.7.

D. Fraud Claim

Next, Defendants argue that Plaintiffs have not pleaded their fraud claim with sufficient particularity as required by Federal Rule Civil Procedure 9(b). (Doc. No. 91 at 10.) Defendants maintain that Plaintiffs' allegations lack specific factual details, including any alleged fraudulent statements, the time or place of any alleged fraud, any actions by Plaintiffs in reliance on the alleged fraudulent statements, or any specific injury suffered by Plaintiffs because of the alleged fraud. (Id. at 11.) Further, Defendants argue that Plaintiffs' fraud claim "reflect[s] statements of future intent, not past or present existing facts as required by Tennessee's elements of fraud." (Id. at 12.) Accordingly, Defendants assert that Plaintiffs' fraud claim should be dismissed. (Id.)

Plaintiffs respond that, taking their Second Amended Complaint in its entirety, they have sufficiently pleaded their fraud claim. (Doc. No. 100 at 13.) Plaintiffs acknowledge that, under Federal Rule Civil Procedure 9(b), fraud claims must be pleaded with particularity. (Id.) Plaintiffs note that they have alleged specific factual detail concerning Lewis's fraudulent scheme, the false representations Lewis made, the approximate time he made those statements, his fraudulent intent, their reliance on these false statements, and the consequential injuries they suffered from that fraud. (Id. at 14.) Plaintiffs contend that: (1) Lewis made material misrepresentations concerning the necessity and purpose of forming CFP, how the relationship between the two companies would operate, and the rights/interests Plaintiffs would retain in CFP; (2) in reliance on these fraudulent statements, Plaintiffs agreed to the formation of ACF and the proposed structural relationship between the companies, including Lewis and Jane's co-ownership of CFP and the Sidco, Meridian, and Armory Leases; and (3) Plaintiffs suffered significant monetary damages as a result. (Id. at 14-15.) Plaintiffs also argue that, despite Defendants' argument that the fraud claim has not been pleaded with sufficient particularity, Defendants have already filed an Answer that responds to the fraud claim and the supporting allegations. (Id.) Therefore, Plaintiffs contend that their fraud claim should proceed. (Id.)

The Federal Rules of Civil Procedure provide that a party alleging fraud must state, with particularity, the circumstances constituting the fraud. See Fed. R. Civ. P. 9(b). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Id. To plead fraud with particularity, a plaintiff must allege: (1) the time, place and content of the alleged misrepresentation; (2) the fraudulent scheme; (3) the defendant's fraudulent intent; and (4) the resulting injury. Power & Telephone Supply Co., Inc. v. Suntrust Banks, Inc., 447 F.3d 923, 931

(6th Cir. 2006); <u>Pineda Transp.</u>, 2018 WL 2137760, at \*4; <u>see also</u> <u>United States ex rel. Kreipke v. Wayne State Univ.</u>, Case No. 12-14836, 2014 WL 6085704, at \*3 (E.D. Mich. Nov. 13, 2014).

Although Rule 9(b) adds additional pleading requirements for allegations of fraud or mistake, it should not be read to defeat the general policy of simplicity and flexibility in pleadings contemplated by the Federal Rules. <u>U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.</u>, 532 F.3d 496, 503-04 (6th Cir. 2008) (citing <u>Michaels Bldg. Co. v. Ameritrust Co., N.A.</u>, 848 F.2d 674, 678 (6th Cir. 1988)). "Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: 'to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading.'" <u>Id.</u> (citing <u>Michaels Bldg. Co.</u>, 848 F.3d at 678). Moreover, the requirement that a plaintiff specifically allege the time, place, and content of the alleged misrepresentation "should be understood in terms of Rule 9(b)'s broad purpose of ensuring that a defendant is provided with at least the minimum degree of detail necessary to bring a competent defense." <u>Id.</u> "Essentially, [a complaint] should provide fair notice to Defendants and enable them to 'prepare an informed pleading responsive to the specific allegations of fraud.'" <u>Id.</u>

Fraud occurs when a person intentionally misrepresents a material fact or intentionally produces a false impression in order to mislead another or to obtain an unfair advantage. <u>Orlowski v. Bates</u>, 146 F. Supp. 3d 908, 924 (W.D. Tenn. 2015); <u>Brown v. Birman Managed Care, Inc.</u>, 42 S.W. 3d 62, 66 (Tenn. 2001). The representation must have been made with knowledge of its falsity and with a fraudulent intent. <u>Id.</u> The representation must have been to an existing or past fact that is material, and the plaintiff must have reasonably relied upon that misrepresentation to his injury. <u>Id.</u> (quoting <u>Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n</u>, 176 F.3d 315, 322 (6th Cir. 1999)).

Taking Plaintiffs' Second Amended Complaint as a whole, Plaintiffs have stated their fraud claim with sufficient particularity. <u>See</u> <u>Wilkins ex rel. U.S. v. State of Ohio</u>, 885 F. Supp. 1055, 1065-66 (S.D. Ohio 1995) (noting that, in examining fraud claims, the complaint must be considered as a whole). To be sure, if the specific allegations contained in the Second Amended Complaint's "Count IV-Fraud" section are viewed in isolation, Plaintiffs fraud claim would clearly fail to comply with Rule 9(b). (<u>See</u> Doc. No. 73 at 20-21.) However, Plaintiffs incorporate their previous allegations into this section by reference. (<u>Id.</u> at 20.)

Throughout their Second Amended Complaint, Plaintiffs allege an overarching fraudulent scheme whereby: (1) Lewis and Jane falsely represented that Plaintiffs needed to form CFP for certain tax advantages, falsely claimed that CFP should be owned by them to avoid complications with the Sarbanes-Oxley Act, and falsely represented that Plaintiffs would retain interests in CFP's assets; (2) Plaintiffs relied on these representations and formed CFP and designed the structural relationship between the companies based on these representations; and (3) Plaintiffs suffered monetary damages as a result. (<u>Id.</u> at 3-12.) Further, Plaintiffs allegations are replete with specific temporal references to when and how Lewis made certain alleged misrepresentations. (<u>Id.</u> at 3-5.) For example, the Second Amended Complaint alleged that Lewis's representations concerning the need to form CFP occurred in early 2003, with the actual formation of CFP commencing in September 2003. (<u>Id.</u> at 3-4.) Although these temporal allegations are not alleged with pinpoint precision, given Rule 9(b)'s broad purpose and that Defendants have already answered Plaintiffs' fraud allegations, the allegations clearly provide at least the minimum degree of detail necessary to allow Defendants to mount a competent defense. <u>U.S. ex rel. SNAPP, Inc.</u>, 532 F.3d at 503-04.

Further, Plaintiffs allege that Lewis, as an employee of ACF and owner of CFP, operated out of ACF's satellite office in Nashville, Tennessee, and, therefore, this is the place from which

he made his misrepresentations. (Id.) Plaintiffs' fraud claims relating to the Armory Lease and other ancillary agreements likewise state in sufficient detail the relevant facts giving rise to those claims. (See Doc. No. 73 at 12-17.) Moreover, contrary to Defendants' argument, Plaintiffs allegations clearly refer to Lewis's past misrepresentations regarding the circumstances surrounding the formation and structural relationship of CFP and the other lease agreements. (Id. at 2-6.) Additionally, although Plaintiffs, at this juncture, cannot definitively prove that the misrepresentations were false at the time they were made, such a showing is not required. See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")

Therefore, the Court concludes that Plaintiffs have met their burden under Rule 9(b) and their fraud claim will be allowed to proceed.

E.  Breach of Fiduciary Duty Claims

Defendants argue that Lewis did not breach his fiduciary duties to ACF in orchestrating certain agreements between ACF and CFP because Lewis, as owner of CFP, owed a fiduciary duty only to CFP. (Id. at 12-13.) Defendants maintain that Lewis was hired as ACF's Vice President of National Accounts to provide sales and management expertise in the commercial floor covering industry, and, therefore, any suggestion by Lewis to Plaintiffs about creating and operating CFP and structuring the relationship between the companies was not within the scope of his fiduciary duty to ACF. (Id. at 13.) Likewise, when Lewis negotiated with Plaintiffs about the lease agreements, he was acting simultaneously as an employee of ACF and representative of CFP. (Id. at 14.) Defendants further argue that, even if Lewis owed a fiduciary duty to ACF when he proposed the creation and operation of CFP, he fully disclosed the parameters of his proposal to

Plaintiffs, and, after considering this information, Plaintiffs voluntarily consented to the proposal. (Id. at 14-15.)

Plaintiffs respond that (1) Lewis had a fiduciary duty to ACF; (2) they placed special trust and confidence in Lewis to act in the best interests of ACF; (3) Lewis assured Plaintiffs that any transactions with CFP and by CFP would be in the best interests of ACF; (4) Lewis breached this fiduciary duty to ACF by shifting profits from ACF to CFP, placing ACF into real estate leases at above-market rates, and forcing ACF to make capital improvements to the lease properties that were rightfully CFP's obligation; and (5) Lewis alone personally profited from these transactions, which caused financial injury to Plaintiffs. (Doc. No. 100 at 18.) Further, Plaintiffs contend that Defendants' arguments concerning the formation and operation of CFP raises factual disputes not appropriate for resolution in a Rule 12(c) motion. (Id. at 19.)

Fiduciary duty applies to any person who occupies a position of peculiar confidence towards another and refers to integrity and fidelity in that relationship and contemplates fair dealing and good faith, rather than legal obligation, as the basis for any transaction between parties. See Johnson & Brewer v. Pritchard, 73 S.W. 3d 193, 200 (Tex. 2002).[3] Texas courts have long recognized that fiduciary duties can arise in several different contexts, such as an attorney-client relationships, partnerships, or employment. Id. Under Texas law, the elements of breach-of-fiduciary duty are: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant. Anderton v. Crowley, 378 S.W. 3d 38, 51 (Tex. Ct. App. 2012) (citing Jones v. Blume, 196 S.W.3d 440, 447 (Tex. Ct. App. 2006)).

---

[3] The Employment Agreement, from which Lewis's alleged fiduciary duty to ACF arose, is governed by, and construed in accordance with, Texas law. (See Doc. No. 73-1 at 4.)

A fiduciary breaches his duty to his beneficiary if (1) he engages in a transaction with his beneficiary that is not fair and equitable; (2) he does not make reasonable use of the confidence the beneficiary has placed in it; or (3) he does not make full and complete disclosure of all important information. Id. "Other factors relevant to fairness include whether the beneficiary had the benefit of independent advice, whether the fiduciary benefited at the beneficiary's expense, and whether the fiduciary significantly benefited from the transaction as viewed in light of circumstances existing at the time of the transaction." Id. In determining the scope of a fiduciary's duty, the court must consider the nature and purpose of the fiduciary relationship, in addition to the agreements between the parties. Nat'l Plan Admr's., Inc. v. Nat'l Health Ins. Co., 235 S.W.3d 695, 700 (Tex. 2007).

Here, Defendants appear, somewhat confusingly, to offer a two-pronged argument first, that Lewis's advice, representations, and dealings regarding the creation, formation, operation, and business relationships between ACF and CFP were outside the scope of the fiduciary duty created by the Employment Agreement, and, therefore, no fiduciary duty was owed regarding these actions; and second, that even if such a fiduciary duty was owed, the dealings were above-board and made with the full consent of ACF and its representatives, and, therefore, no fiduciary duty was breached. (Doc. No. 91 at 12-15.) Plaintiffs essentially respond that: (1) Lewis owed an overarching fiduciary duty to ACF beyond the duty outlined in the Employment Agreement; and (2) Lewis's fraudulent dealings violated that fiduciary duty. (Doc. No. 100 at 17-22.) Considering these arguments, along with the factual allegations contained in the Second Amended Complaint, there are significant factual issues in dispute that prevent the Court from resolving or dismissing the claims on Defendants' Rule 12(c) motion. See Contour Indus., Inc. v. U.S. Bancorp, Case No. 2:07-cv-234, 2008 WL 2704431, at *3 (E.D. Tenn. July 3, 2008) ("Any ultimate decision

concerning whether [defendant] was a fiduciary or employee . . . must await the factual development of the record.")

Specifically, Defendants and Plaintiffs present counter-factual arguments regarding: (1) what fiduciary duty, if any, was owed; (2) whether this alleged fiduciary duty extended to the business relationship between ACF and CFP; and (3) most importantly, the precise, alleged representations of Lewis that violated his fiduciary duty. (See Doc. Nos. 91 at 12-15, 100 at 17-22.) Further, although Defendants contend that Lewis was above-board in his dealings with Plaintiffs and fully disclosed all relevant facts prior to any agreements (creation/formation of CFP, Sidco Lease, Armory Lease, Meridian Lease, etc.), Plaintiffs, as shown above, vigorously contest that the relevant terms of these agreements were provided, and, indeed, allege that such terms were misrepresented. (Id.) Because definitively resolving Plaintiffs' breach of fiduciary duty claims would require the Court to resolve these linchpin factual disputes, the better course of action is to allow the claims to be more fully-developed through discovery, so that they may be disposed of at a later proceeding. Accordingly, the Court will deny Defendants' Rule 12(c) motion to the extent it seeks dismissal of Plaintiffs' breach of fiduciary duty claims.

F.   Civil Conspiracy Claim

Additionally, Defendants argue that Plaintiff's civil conspiracy claims must be dismissed for failure to comply with the relevant pleading standard. (Doc. No. 91 at 16.) Defendants argue that Plaintiffs fail to identify (1) the specific actions that comprised the alleged conspiracy; and (2) how Jane Moorer (Lewis's wife) was involved in the conspiracy. (Id.) Defendants contend that Plaintiffs' conspiracy claim consists only of a "bland recitation of the elements of civil conspiracy" and, therefore, it must be dismissed as a matter of law. (Id.) At minimum, Defendants argue that the civil conspiracy claims against Jane Moorer must be dismissed. (Id.) Moreover, Defendants

assert that Plaintiffs' pleading deficiencies require their conspiracy claims to be dismissed under Rule 9(b) because civil conspiracy claims sound in fraud. (Id. at 17.) Finally, Defendants argue that Plaintiffs' civil conspiracy claim must be dismissed because there is no actionable underlying tort. (Id. at 17-18.)

Plaintiffs respond that they have sufficiently stated their conspiracy claim because they set forth in specific detail that (1) Lewis and Jane Moorer conspired to defraud ACF; (2) both fraudulently induced Plaintiffs to set up CFP within their sole control and falsely stated Plaintiffs would retain an interest in CFP and its assets; (3) Lewis and Jane Moorer, through CFP, acquired real estate and other assets; and (4) both now disclaim Plaintiffs' interests in CFP or any of its assets. (Doc. No. 100 at 24.) Specifically, as to Jane Moorer, Plaintiffs argue that she is a 95% owner of CFP, and, therefore, it is reasonable to infer that she: (1) ratified the underlying transactions for CFP; (2) knew that CFP was merely a vehicle to convert Plaintiffs' assets; and (3) agreed with Lewis on this course of action. (Id. at 25.) Plaintiffs also argue that their conspiracy claims are well-pleaded and in compliance with Rule 9(b). (Id.) Finally, Plaintiffs contend that at least two torts underlie their conspiracy claims: (1) breach of fiduciary duty; and (2) fraud. (Id.)

The elements of a cause of action for civil conspiracy in Tennessee are: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) injury to person or property resulting in attendant damage. Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., 461 S. Supp. 2d 629, 642 (M.D. Tenn. 2006) (citing Braswell v. Carothers, 863 S.W. 2d 722, 727 (Tenn. Ct. App. 1993) and Menuskin v. Williams, 145 F.3d 755, 770 (6th Cir. 1998)). In addition, civil conspiracy requires an underlying predicate tort allegedly committed pursuant to

the conspiracy. Id. (citing Morgan v. Brush Wellman, Inc., 165 F. Supp. 2d 704, 721 (E.D. Tenn. 2001)).

Injury to person or property, resulting in attendant damage, must also exist, and each conspirator is liable for all damages naturally flowing from any wrongful act of a co-conspirator carrying the common design. Brown v. Birman Managed Care, Inc., Case No. M1999-02551-COA-R3-CV, 2000 WL 122208, at *2-3 (Tenn. Ct. App. Feb. 1, 2000). Moreover, the agreement required to establish a conspiracy "'need not be formal, the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy.'" Chenault v. Walker, Case No. W1998-00769-SC-R11, 2001 WL 28687, at *6 (Tenn. Jan. 12, 2001) (quoting Dale v. Thomas H. Temple Co., 208 S.W. 2d 344, 353 (Tenn. 1948)). Because conspiracies are "by their very nature secretive operations," they "can seldom be proved by direct evidence." Brown, 2000 WL 122208, at *3. Therefore, the existence of the conspiracy "may be inferred from the relationship of the parties or other circumstances." Id. In other words, a conspiracy "may be proved by circumstantial evidence." Id.

The Court finds that, contrary to Defendants' arguments, Plaintiffs have alleged sufficient facts for the Court to infer the existence of a civil conspiracy on the part of both Lewis and Jane Moorer. First, the Court acknowledges that Plaintiff's boilerplate allegation that "Lewis and Jane combined to conspire against ACF to commit fraud or to have Lewis breach his fiduciary duties to ACF" is insufficient, by itself, to demonstrate the existence of a conspiracy. However, Defendants' argument that Plaintiffs' civil conspiracy claim is insufficiently pleaded is belied by viewing the Second Amended Complaint as a whole. Plaintiff's previous factual allegations are incorporated into Plaintiffs' conspiracy claim, and therefore, must be taken into account when considering the claim. (See Doc. No. 73 at 30).

According to the Second Amended Complaint, Lewis and Jane Moorer are husband and wife, both were involved in the proposal to create and operate CFP as a "sister" entity, and both serve as co-owners of CFP, with Lewis retaining a 5% ownership interest and Jane retaining a 95% ownership interest. (Id. at 3-4.) It is clear to the Court that Plaintiffs' overarching allegations are: (1) Lewis and Jane combined to unlawfully convert Plaintiffs' assets through the creation and operation of CFP; (2) both Lewis and Jane were instrumental in convincing Plaintiffs to create and operate CFP to achieve this goal; (3) Lewis and Jane proceeded to convert Plaintiffs' assets through various agreements (Armory Lease, Sidco Lease, Meridian Lease, Master Buy-Sell Agreement); and (4) this civil conspiracy caused Plaintiffs monetary damage. (Id. at 3-17.) These allegations are sufficient to state a claim for civil conspiracy. See Freeman Mgmt. Corp., 461 S. Supp. 2d at 642. Further, the Court concludes that, to the extent Fed. R. Civ. P. 9(b) applies to Plaintiffs' civil conspiracy claim, they have pleaded their claim with the requisite particularity.

Further, as to Defendants' particular argument that Jane Moorer should be dismissed as a defendant, the Court finds that the allegations regarding the close, personal relationship of Jane and Lewis prevent her dismissal. (Id. at 4-12.) As noted, Lewis and Jane are husband and wife, both were involved in the proposal to create and operate CFP, and both serve as CFP co-owners. (Id. at 3-4.) These close, interconnected relationships, while limited, are enough to infer the existence of a conspiratorial agreement. Brown, 2000 WL 122208, at *3. Therefore, Plaintiffs may pursue their civil conspiracy claim against all Defendants, including Jane. Finally, as noted above, Plaintiffs' claims for fraud and breach of fiduciary will proceed, and, therefore, either may serve as the underlying tort for Plaintiffs' civil conspiracy claim. See Greene v. Brown & Williamson Tobacco Corp., 72 F. Supp. 2d 882, 893 (W.D. Tenn. 1999) (holding that fraud claim was appropriate underlying tort for plaintiff's civil conspiracy claim); Lane v. Becker, 334 S.W. 3d

756, 763-64 (Tenn. Ct. App. 2010) (holding that a claim for civil conspiracy requires an underlying, actionable predicate tort).

Accordingly, Defendants' motion will be denied to the extent it seeks dismissal of Plaintiffs' civil conspiracy claim.

G.  Unjust Enrichment/Quantum Meruit Claims

Defendants argue that Plaintiffs, for the first time in their Second Amended Complaint, include claims for unjust enrichment/quantum meruit. (Doc. No. 91 at 18.) Defendants argue that unjust enrichment/quantum meruit claims may only be raised if there is no contract between the parties, and, therefore, to the extent Plaintiffs' unjust enrichment/quantum meruit claims concern the Meridian and Sidco properties, the claims must be dismissed as a matter of law. (Id. at 18-19.) Further, Defendants argue that any unjust enrichment/quantum meruit claims related to the lease of a 2015 Mercedes (a CFP asset) should be dismissed because the lease serves as the operative agreement for that asset. (Id. at 19.)

Plaintiffs respond that CFP received funds (in the form of capital improvements to the Sidco and Meridian properties and pre-paid maintenance services to the Mercedes) not provided for in the respective leases, and these payments form the basis for their unjust enrichment/quantum meruit claims. (Doc. No. 100 at 23-24.) Further, Plaintiffs contend that the Meridian, Sidco, and Mercedes leases are not part of the record before the Court on Defendants' Rule 12(c) motion, so it is premature (and functionally impossible) for the Court to rule on whether these claimed expenses were covered by the respective agreements. (Id.)

Plaintiffs are correct that the agreements at issue are not part of the "pleadings" the Court reviewed in deciding Defendants' Rule 12(c) motion. (See Doc. No. 73, 84.) Therefore, the Court is unable to determine whether Plaintiffs' alleged capital improvements and maintenance expenses

were subject to the respective lease agreements. Because the Court is prevented from looking outside the pleadings, the Court declines to dismiss Plaintiffs' unjust enrichment/quantum meruit claims at this juncture and will instead await further development of the factual record.

H.  Promissory Estoppel

Finally, Defendants argue that Plaintiffs' promissory estoppel claim should be dismissed because Plaintiffs' allegations fail to demonstrate the existence of a promise. (Doc. No. 91 at 19-20.) Defendants characterize Plaintiffs alleged "promises" as "vague statements or opinions, some of which are directed toward future events." (Id.) Plaintiffs respond that they have sufficiently alleged their promissory estoppel claim in specific factual detail such that it may not be dismissed on Defendants' Rule 12(c) motion. (Doc. 100 at 22-23.)

Promissory estoppel is based upon a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance. Barnes & Robinson Co., Inc. v. Onesource Facility Serv., Inc., 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006). Such a promise is binding if injustice can be avoided only by enforcement of the promise. Id. Under Tennessee law, a plaintiff bringing a promissory estoppel claim must show three elements: (1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that he reasonably relied upon the promise to his detriment. Vaughter v. BAC Home Loans Serv., LP, Case No. 3:11-cv-00776, 2012 WL 162398 at * 4 (M.D. Tenn. Jan.19, 2012).

However, there are limits to the application of promissory estoppel: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justified reliance on the promise as made. Barnes & Robinson, 195

S.W.3d at 645. No injustice arises in the refusal to enforce a promise where either the loss induced is negligible or the promisee's reliance is not reasonable. Id.

Tennessee does not liberally apply the doctrine of promissory estoppel. To the contrary, it limits application of the doctrine to exceptional cases. Id.; see also Doe v. University of the South, 687 F. Supp. 2d 744, 763 (E.D. Tenn. 2009). Such exceptional cases are found only where a defendant's conduct is akin to fraud. See Doe, 687 F. Supp. 2d at 763. Promissory estoppel claims are generally disfavored in Tennessee, and they are only available where there is no valid contract between the parties. Vaughter, 2012 WL 162398 at *9; see also Holt v. Macy's Retail Holdings, Inc., 719 F. Supp. 2d 903, 913-14 (W.D. Tenn. 2010). Promissory estoppel is an equitable remedy based on a quasi-contractual theory only available where there is an absence of consideration between the parties so that there is no valid contract. Id.

As with Plaintiffs' unjust enrichment/quantum meruit claims, the Court declines to dismiss Plaintiffs' promissory estoppel claims at this juncture. The Court notes that, to the extent Plaintiffs' promissory estoppel claim concerns the Sidco and Meridian Leases, those agreements are not before the Court. Further, the Court notes that dismissing Plaintiffs' promissory estoppel claims would require it to make definitive determinations regarding factual disputes, including Defendants' precise representations regarding the creation of CFP and other ancillary agreements. The Court will allow for further development of the factual record before resolving this claim at summary judgment or at trial.

## IV.    Conclusion

For these reasons, Defendants' Rule 12(c) Motion For Judgment On The Pleadings Relating to Plaintiffs' Second Amended Complaint (Doc. No. 90) is granted in part and denied in part. Plaintiffs' Declaratory Judgment Act claim regarding the Buyback Option will be dismissed.

Plaintiffs' remaining claims will be allowed to proceed. This case will be returned to the Magistrate Judge for further case management.

An appropriate Order will enter.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE